UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DONALD OTIS WILLIAMS,
    Petitioner,

v.                          Case No 5:16-cv-357-WFJ-PRL

SECRETARY, DEPARTMENT OF
CORRECTIONS, and ATTORNEY GENERAL, et al.,
    Respondents.
_____/

SUPPLEMENTAL APPENDIX III

| Document | Page Nos. |
|---|---|
| January 24, 2018 Transcript | A301-A370 |
| August 28, 2018 Transcript | A372-A401 |
| Sean Fisher Sworn Affidavit | A402-A403 |
| Mandate 5th DCA 5D16-2358 | A404-A407 |
| Narrative Describing Speedy Trial | A408-A412 |
| ¹August 21, 2013 Trial Transcript | A413-A456 |
| Material Lost or Damaged by USPS of this Instrument | A457-A462 |

_____

1. The date August 22, 2013 is an erroneous date as is the name substituted for "Defendant" as "Mr Graves" on pages A416-A419.

A1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, this instrument was sent by U.S. Mail to the following parties on ~~December ___, 2025~~ January 28, 2026

1. United States District Court
   207 Second Street, Room 337
   Ocala, Florida 34475-6666

2. Attorney General
   444 Seabreeze Boulvd Fifth Floor
   Daytona Beach, Florida 32118

## OATH

I declare the foregoing statement is true and correct.

Dated: ~~December ___, 2025~~ January 28, 2026

Donald Otis Williams, U13479
Union Correctional Institution
P.O. Box 1000
Raiford, Florida 32083-1000

Donald Otis Williams, ~~December ___, 2025~~ January 28, 2026

*/s/ Donald Otis Williams* January 28, 2026

A2

IN THE SUPREME COURT OF FLORIDA

DONALD OTIS WILLIAMS,
Petitioner

VS. CASE NO:_____
L.T.CASE NOS: 2011-CF-105
2000-CF-2130

STATE OF FLORIDA, ET AL.,
Respondents.
_____/

**RECEIVED**

MAR 20 2023

HEIDI DAVIS
CIRCUIT JUDGE

. SWORN AFFIDAVIT

I, Sean T. Fisher, a private investigator licensed to practice in the State of Florida and in excellent standing with the Florida Justice Administrative Commission hereby informs the Honorable Court and all interested parties that after an extensive and diligent search of the files and records in the fourteen large boxes containing over 50,000 documents provided to Petitioner Donald Otis Williams by the elected Public Defender Michael Allen Graves and Assistant State's Attorney Hugh Dean Bass Jr. during death penalty trial court proceeding on August 28, 2018, assert there is no acknowledgment of receipt signed by Petitioner Donald Otis Williams that would indicate or suggests Petitioner Donald Otis Williams accepted public defender death penalty trial case file records or was provided public defender death penalty trial case file records before or during August 2013 death penalty trial contrary to state and federal laws and in direct contempt and with indirect contempt of death penalty trial court commands rendered in February 2013 and, but not limiting, in March 2013 concerning death penalty trial court actions.

I can unequivocally confirm the only acknowledgment of receipt signed by Petitioner Donald Otis Williams that exists, and legally verifies Petitioner Donald Otis Williams accepted public defender death penalty trial case file records is clearly indicated as August 28, 2018.

I can also provide the Honorable Court, and all interested parties that, following a meticulous and exhaustive search of all the records produced during the August 28, 2018 death penalty trial court proceeding there is absolutely no documented proof that remotely implies the public defender conformed with State and Federal laws or death penalty trial court orders to furnish death penalty trial court defense counsel Petitioner the public defender's comlete death penalty trial case file records before or during the August 2013 death penalty trial.

In closing I respectfully proclaim the following:

A402

UNDER THE PENALTIES OF PERJURY, I DECLARE, I HAVE READ THE FOREGOING AFFIDAVIT AND THE FACTS STATED ABOVE ARE TRUE AND CORRECT AND IN ACCORDANCE WITH SECTION 92.525, FLORIDA STATUTES (2018).

Further affiant sayeth not.

*[signature]*

SEAN T. FISHER

COUNTY OF ALACHUA, STATE OF FLORIDA

I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State aforesaid and in the County aforesaid to take acknowledgments, personally appeared Sean T. Fisher, who is personally known to me or who has produced a valid State of Florida driver's license as identification and who executed the aforesaid Affidavit, and Sean T. Fisher acknowledged before me the matters contained therein are true.

WITNESS my hand and official seal in Alachua County in the State of Florida this ___7___ day of ___March___, 2019.

*[signature]*

Notary Public

CHRISTOPHER SHEPHERD
Notary Public – State of Florida
Commission # GG 141777
My Comm. Expires Sep 6, 2021
Bonded through National Notary Assn.

A403

# MANDATE

from

## DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA

## FIFTH DISTRICT

THIS CAUSE HAVING BEEN BROUGHT TO THIS COURT BY APPEAL OR BY PETITION, AND AFTER DUE CONSIDERATION THE COURT HAVING ISSUED ITS OPINION OR DECISION;

YOU ARE HEREBY COMMANDED THAT FURTHER PROCEEDINGS AS MAY BE REQUIRED BE HAD IN SAID CAUSE IN ACCORDANCE WITH THE RULING OF THIS COURT AND WITH THE RULES OF PROCEDURE AND LAWS OF THE STATE OF FLORIDA.

WITNESS THE HONORABLE JAY P. COHEN, CHIEF JUDGE OF THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA, FIFTH DISTRICT, AND THE SEAL OF THE SAID COURT AT DAYTONA BEACH, FLORIDA ON THIS DAY.

DATE: May 22, 2017

FIFTH DCA CASE NO.: 5D 16-2358

CASE STYLE:  DONALD OTIS WILLIAMS   v.   STATE OF FLORIDA

COUNTY OF ORIGIN: Lake

TRIAL COURT CASE NO.: 2000-CF-2130

I hereby certify that the foregoing is
(a true copy of) the original Court mandate.

JOANNE P. SIMMONS, CLERK

cc:

Office Of Attorney General        Douglas T. Squire        Donald Otis Williams
Lake Co. Circuit Ct. Clerk

A404

A404

IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

DONALD OTIS WILLIAMS,

    Petitioner,

v.                                                                      Case No. 5D16-2358

STATE OF FLORIDA,

    Respondent.

_____/

Opinion filed March 24, 2017

Petition Alleging Ineffectiveness
of Appellate Counsel,
A Case of Original Jurisdiction.

Donald Otis Williams, Raiford, pro se.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Douglas T. Squire,
Assistant Attorney General, Daytona
Beach, for Respondent.

WALLIS, J.

    Donald Otis Williams filed a petition pursuant to Florida Rule of Appellate Procedure 9.141(d), alleging that his appellate counsel provided ineffective assistance by not raising a claim that the trial court failed to offer counsel for the sentencing portion of

A 405

his violation of probation hearing.[1] We grant the petition and remand for further proceedings consistent with this opinion.

When reviewing a petition alleging ineffective assistance of appellate counsel, "we must determine whether counsel's performance was deficient and, if so, whether 'the deficiency of that performance compromised the appellate process to such a degree as to undermine confidence in the fairness and correctness of the appellate result.'" Pierce v. State, 121 So. 3d 1091, 1093 (Fla. 5th DCA 2013) (quoting Lopez v. State, 68 So. 3d 332, 333 (Fla. 5th DCA 2011)). Our court has held:

> [I]f a defendant waives the right to counsel at any stage of the criminal proceedings, the trial court must renew the offer of assistance of counsel at each subsequent stage of the proceedings. Sentencing is a critical stage in criminal proceedings; and, even if a defendant does not request appointment of counsel, this omission is not considered a knowing waiver of the right to counsel.

Hays v. State, 63 So. 3d 887, 888 (Fla. 5th DCA 2011) (alteration in original) (quoting Hardy v. State, 655 So. 2d 1245, 1247–48 (Fla. 5th DCA 1995)); see also Fla. R. Crim. P. 3.111(d)(5) ("[I]f a waiver is accepted at any stage of the proceedings, the offer of assistance of counsel shall be renewed by the court at each subsequent stage of the proceedings at which the defendant appears without counsel."). A trial court's failure to offer counsel for sentencing ordinarily constitutes fundamental error. Jackson v. State, 983 So. 2d 562, 575 (Fla. 2008). Thus, appellate counsel provides ineffective assistance by not raising the issue on appeal. Henretty v. State, 146 So. 3d 55, 56 (Fla. 1st DCA

---

[1] Petitioner raises two additional claims of ineffective assistance of appellate counsel that we deny without further discussion.

A406

2014) (finding appellate counsel ineffective and ordering a new appeal); Blane v. State, 987 So. 2d 241, 241 (Fla. 1st DCA 2008) (same).

The record reflects that the trial court offered to appoint Williams counsel at the outset of the violation of probation hearing, but Williams declined. However, after finding that Williams violated his probation, the trial court immediately proceeded to sentencing before renewing the offer for counsel. The trial court's failure to renew the offer is fundamental error, which, if raised on appeal, would have resulted in a reversal and remand for a new sentencing hearing. See Henretty, 146 So. 3d at 56. We note that, under these circumstances, appellate courts often grant the petitioner a new appeal. See id. Nonetheless, having already determined that the trial court erred by failing to renew the offer for counsel, we find that ordering a new appeal would result in unnecessary redundancy. See Johnson v. Wainwright, 498 So. 2d 938, 939 (Fla. 1986) ("In this instance, however, a new appeal would be redundant because we acknowledge that reversible error occurred at trial."); accord Hampton v. State, 178 So. 3d 921, 922 (Fla. 5th DCA 2015); Pierce v. State, 121 So. 3d 1091, 1094 (Fla. 5th DCA 2013); Disinger v. State, 574 So. 2d 268, 269 (Fla. 5th DCA 1991). Therefore, we grant the petition and remand with instructions to vacate Williams's sentence and to hold a new sentencing hearing at which the trial court must offer to appoint Williams counsel.

PETITION GRANTED; REMANDED with Instructions.

COHEN, C.J. and ORFINGER, J., concur.

A407

DONALD WILLIAMS U13479 213 P5227S ID:2483111867 [P 1/3]

You have received a jpay letter, the fastest way to get mail

From : Douglas Diamond, CustomerID: 22621176
To   : DONALD WILLIAMS, ID: U13479
Date : 12/14/2025 9:43:09 AM EST,   Letter ID: 2483111867
Location : 213
Housing : P5227S

Plain error some research - quick read

Good morning, not sure if this would help any
If the State provides evidence to the Public Defender (PD) and the PD is discharged without delivering it to the defendant or successor counsel within Florida's speedy trial time (180 days for felonies), it's a serious issue that could lead to a Speedy Trial Violation (Rule 3.191), potentially causing dismissal, and could be raised as an unpreserved error under the Plain Error Doctrine, requiring showing it affected substantial rights and impacted justice, which is highly likely given the evidence denial.
What Happens
Speedy Trial Motion: The defense would file a Motion to Dismiss for Speedy Trial Violation (Florida Rule of Criminal Procedure 3.191).
State's Responsibility: The State's obligation is to ensure discovery is provided. While it went to the PD, the PD's failure to transfer it to the defendant or new counsel violates the spirit and letter of discovery/speedy trial rules, potentially stopping the clock or triggering dismissal.
Dismissal: If the delay is unjustified and violates speedy trial rights, the case could be dismissed (with or without prejudice, depending on circumstances).
Is it Plain Error?
Yes, potentially. Plain Error requires an error that is "plain," affects substantial rights, and seriously affects the fairness/integrity of the judicial process.
Discovery Violation: Failure to provide crucial evidence (discovery) is a significant constitutional issue, often impacting a fair trial. A prosecutor's failure to ensure the evidence reaches the defendant, even if initially given to the PD, can be seen as affecting substantial rights.
Prejudice: Proving prejudice (that the lack of evidence harmed the defense) is usually key, but denying access to evidence needed for defense preparation is often prejudicial in itself.
What the Defendant Needs to Show
Error: The State failed to ensure discovery reached the defendant.
Plain: The rule requiring discovery is well-established.
Substantial Right: Denial of evidence needed for defense.
Impact on Justice: The inability to review evidence impeded the defense, undermining a fair trial.
In essence, this scenario creates a strong argument for a speedy trial violation and raises significant questions about fairness, making it a compelling candidate for plain error review on appeal if not resolved at trial.

Unpreserved Errors Are All the Same, Right? Not Exactly
Part 1
In both state and federal court, to preserve an error for review and correction on appeal, a party must make a specific, contemporaneous objection to the perceived error.1 These rules serve three goals: 1) It gives the trial court the opportunity to correct the error; 2) it prevents the delay and an unnecessary use of the appellate process that may result from the failure to cure the error early; and 3) it prevents counsel from allowing errors to go unchallenged by objection and then later trying to use that error to a client's tactical advantage.2 Under Florida law, the sole exception to the contemporaneous-objection rule is where the unobjected-to error is fundamental in nature.3 In contrast, under federal law, unobjected-to error is reviewed for plain error.4 This article attempts to explain the similarities and differences between the concepts of reversible fundamental and plain error.
Fundamental Error
The Florida Supreme Court has stated that "in order to be of such fundamental nature as to justify a reversal in the absence of timely objection, the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error."5 Under this analysis, an error is deemed fundamental "when it goes to the foundation of the case or the merits of the cause of action and is equivalent to a denial of due process."6 In addition, the court has stated that "[t]he doctrine of fundamental error should be applied only in rare cases where a jurisdictional error appears or where the interests of justice present a compelling demand for its application."7

In general, the fundamental error doctrine is the same in both criminal and civil cases under Florida law, but courts are apparently more inclined to find fundamental error in criminal cases — where an individual's liberty is at stake — than they are in civil cases. In criminal cases, for example, an improper jury instruction may be held to be fundamental error; whereas, in a civil case, it may not.8 An incorrect or improper jury instruction in a criminal case is more likely to violate not only the defendant's due process right to a fair trial, but also the derivative right to a jury trial.9 The theory here is that if the jury followed the law as it was instructed, then the ultimate verdict is presumably predicated upon the legal premises provided in the jury instructions.10 Therefore, it follows that the erroneous legal principles contained in the incorrect jury instruction likely impacted the jury's deliberations and the resulting verdict.11 Thus, an erroneous jury instruction that results in a guilty verdict is the type of error that strikes at the fundamental legality of the trial itself and would be recognized as fundamental error.12

To be fundamental in nature, the error must also be harmful. If the error is not harmful, it cannot meet the requirement of being fundamental and, therefore, it cannot be corrected if it was not preserved for appeal by a contemporaneous objection.13 For example, when a jury instruction contained an error that was not material to what the jury must consider to convict the defendant of the crime charged, the error is not deemed to be fundamental.14 For an error to meet this narrow standard of fundamentality, it must be error that prejudiced the defendant.15

As the Florida Supreme Court observed in Jackson v. State, 983 So. 2d 562, 576 (Fla. 2008), the U.S. Supreme Court has "recognized a limited class of fundamental constitutional errors that 'defy analysis by the "harmless error" standards.'"16 "These errors are so 'intrinsically harmful as to require automatic reversal (i.e., 'affect substantial rights') without regard to their effect on the outcome.'"17 The complete denial of counsel to a criminal defendant has been listed as one of the classes of errors that requires automatic reversal.18 In contrast, the court found that a prosecutor's statement, "Don't let him get away with this," did not rise to the level of fundamental error because the prosecutor also told the jury there were lesser-included offenses, which he listed, and then asked the jury not to let the defendant get away with first-degree felony murder if that was the crime for which they chose to convict him.19 Thus, even in criminal cases, whether the error will be deemed fundamental will depend on the overall nature of the unobjected-to error and its ultimate impact on the outcome of the case or the prejudice to the defendant.

Jurisdictional issues present the best examples of the kinds of claims that can be raised in the appellate court despite the absence of a contemporaneous objection in the trial court.20 The jurisdiction of the trial court is a fundamental matter that is permitted to be raised for the first time on appeal.21 If a trial court acts in excess of its jurisdiction, for example, the resulting error is one that necessarily affects the foundation of the

jpay Tell your friends and family to visit www.jpay.com to write letters and send money!

A408

**You have received a jpay letter, the fastest way to get mail**

From : Douglas Diamond, CustomerID: 22621176
To   : DONALD WILLIAMS, ID: U13479
Date : 12/14/2025 9:43:09 AM EST,   Letter ID: 2483111867
Location : 213
Housing : P5227S

case.22

Whether the fundamental error exception will be applied to a constitutional issue is not always clear.23 An error may be constitutional but still might not rise to the level of fundamental error requiring a reversal in the absence of a timely objection.24 For example, the Supreme Court has held that an improper comment on the failure of an accused to testify in a criminal case is a constitutional error, but that it, nevertheless, does not serve as ground for a reversal of a conviction when the defendant did not object below because it is not also fundamental error.25 Other constitutional issues are regularly classified as fundamental error, however.26 For example, a double-jeopardy defense may serve as a basis for the reversal of a criminal conviction notwithstanding the defendant's failure to file a motion to dismiss in the trial court.27 Similarly, a violation of due process of law or a conviction for a nonexistent offense will not be affirmed merely because it was not preserved for review on appeal.28

Even though the concept of fundamental error is essentially the same in civil and criminal cases, it seems to be much harder in civil cases to convince a court that an unobjected-to error is fundamental and reversible error. But when fundamental error is apparent on the face of the judgment itself, the courts will recognize and correct that error.29 That error must be an error of law, not of fact, however.30 Thus, when a jurisdictional or other fundamental error is apparent on the face of the record itself, that error may be considered by the appellate court, even if it was not assigned as error in the trial court or on appeal.31

To try to categorize the types of error that will be deemed fundamental in civil cases is very difficult — it tends to be a the-court-knows-it-when-it-sees-it situation.32 "The paramount consideration in applying the doctrine of fundamental error [in a civil case] should focus on the public's perception and confidence in the judicial process."33 As Judge Chris W. Altenbernd stated in Hagan v. Sun Bank of Mid-Florida, N.A., 666 So. 2d 580, 584 (Fla. 2d DCA 1996):

"Although fundamental error is extraordinarily difficult to define, the doctrine functions to preserve the public's confidence in the judicial system. Relief is granted for a fundamental error not because the party has preserved a right to relief from a harmful error, but because the public's confidence in our system of justice would be seriously weakened if the courts failed to give relief as a matter of grace for certain, very limited and serious mistakes."

One area in which fundamental error may be found in a civil case is when a court grants a party relief that is not authorized by law, does not exist as a cause of action, or is not otherwise available as a remedy to the plaintiff.34 Examples of this might be an award of a nonmarital asset as part of the equitable distribution in a divorce proceeding, or granting a remedy on an oral contract when the uncontroverted evidence showed it violated the statute of frauds.35

The seminal decision on fundamental error in civil cases is Sanford v. Rubin, 237 So. 2d 134 (Fla. 1970).36 In Sanford, the court defined fundamental error as "error which goes to the foundation of the case or goes to the merits of a cause of action."37 This is basically the same definition of fundamental error as that found in F.B. v. State, 852 So. 2d 226, 229 (Fla. 2003).

The Fourth District Court of Appeal has recognized, however, that in civil cases, it generally limits the use of the Sanford-defined fundamental error to situations in which the trial court granted relief but the party obtaining that relief was not legally entitled to it as a matter of law.38 Errors related to subject-matter jurisdiction may also be recognized as fundamental error.39 Similarly, errors in due process, such as the entry of a judgment without proper notice, may be considered by the courts to be fundamental error.40

Occasionally, courts will use the fundamental error doctrine to correct mistakes or omissions at trial when an objection would not have been possible. For example, the entry of a judgment on unliquidated damages following a default judgment has been held to be fundamental error when the defaulting party had no notice of the trial on damages,41 or the complaint upon which the default judgment was entered did not seek the damages the court ultimately awarded.42 Similarly, courts have reviewed judgments on appeal that were entered against a nonparty.43

Improper comments during closing arguments used to be an area where unobjected-to errors were regularly argued to be fundamental, reversible error. But in Murphy v. International Robotic Systems, Inc., 766 So. 2d 1010 (Fla. 2000), the Supreme Court essentially changed the rules regarding when a court can consider unobjected-to closing arguments at trial. As the court said in its conclusion in Murphy, "[a]lthough we have not absolutely 'closed the door' on appellate review of unpreserved challenges to closing argument, we have come as close to doing so as we believe consistent with notions of due process which deserve public trust in the judicial system."44 Thus, to seek review of unobjected-to, improper comments during closing argument, the complaining party must satisfy the four-part test set forth in Murphy, and he or she must do so in a post-trial motion, not for the first time on appeal.45

Plain Error
Unlike the Florida courts, which employ the fundamental error exception to unpreserved errors, the federal courts utilize a doctrine of "plain error."46 Plain-error review is an extremely stringent form of review.47 Like the fundamental error exception, it is only in rare cases that a trial court will be reversed for plain error.48 Under the plain-error doctrine, an appellate court may, in its discretion, correct an error not raised at trial when the appellant establishes the following four requirements: 1) an error occurred; 2) the error was plain; 3) it affected substantial rights; and 4) not correcting the error would seriously affect the fairness of the judicial proceeding.49 The U.S. Supreme Court has indicated that a per se approach to review for plain error is flawed and has instructed that the fourth prong of this analysis is meant to be applied on a case-specific and fact-intensive basis.50

In the 11th Circuit, the courts define an "error" as a "[d]eviation from a legal rule."51 To find that the error is "plain," the "error must be one that is obvious and clear under current law."52 Generally, if a circuit conflict exists on a question, and the law is unsettled in the circuit in which the appeal was taken, any error cannot be found to be plain or obvious.53 But, the error need not be plain at the time of the trial so long as the error was rendered plain and obvious in that circuit by the time of the appellate review.54 In addition, the courts will find that a plain error affects a party's substantial rights when the error is "prejudicial."55 Finally, the error must seriously undermine the fairness, integrity, and public reputation of the judicial proceedings.56

The U.S. Supreme Court has recognized that its cases speak of a need for a showing that the error affected the "outcome of the district court

jpay Tell your friends and family to visit www.jpay.com to write letters and send money!

A409

**You have received a jpay letter, the fastest way to get mail**

From : Douglas Diamond, CustomerID: 22621176
To   : DONALD WILLIAMS, ID: U13479
Date : 12/14/2025 9:43:09 AM EST,   Letter ID: 2483111867
Location : 213
Housing : P5227S

proceedings" in the "ordinary case."57 The Court has also noted the possibility that certain errors, called "structural errors," might "affect substantial rights" regardless of their actual impact on an appellant's trial.58 Still, "structural errors," are a "very limited class of errors that affect the 'framework within which the trial proceeds.'"59 In the case of structural errors, it can often be difficult to assess the impact of the error on the outcome of the case.60 Indeed, what is truly meant by a structural error has never really been fully clarified by the Court.61

In 2017, however, the Court attempted to further explain the concept of structural errors; that is, the type of errors that should not be deemed harmless beyond a reasonable doubt.62 The Court explained that the "purpose of the structural error doctrine is to ensure insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial."63 Thus, the "defining feature of a structural error is that it 'affect[s] the framework within which the trial proceeds,' rather than being 'simply an error in the trial process itself.'"64 The Court identified three, flexible categories of structural errors: 1) those in which the right at issue is not designed to protect the defendant from erroneous conviction, but instead protects some other right (like the right to conduct one's own defense); 2) those in which the effects of the error are simply too hard to measure (like when a defendant is prevented from selecting the attorney of his or her choice); and 3) those that result in fundamental unfairness (like the denial of an indigent defendant's right to an attorney).65

The Court observed that an error can be deemed structural even if the error does not lead to fundamental unfairness in every case.66 Nevertheless, the Court warned that the term "structural error" has no magical significance as a doctrinal matter;67 it means only that the government is not entitled to deprive the defendant of a new trial by showing that the error was "harmless beyond a reasonable doubt."68

As in Florida, it appears that demonstrating plain error in federal civil cases is harder than in criminal ones. For example, the 11th Circuit has held that when a district court constructively amended the indictment against the defendant, the trial court had committed plain error, which required the reversal of that portion of the conviction that was based on the constructively amended indictment.69 Similarly, when the defendant's conviction was based on inadmissible and unreliable hearsay, the Fifth Circuit found plain error and reversed the judgment of conviction despite the lack of an objection to the evidence at trial.70 Errors involving alternate jurors being present in the jury room during deliberations does not require a per se reversal.71 As the Fifth Circuit has noted, absent any indication that the alternate juror participated in the deliberations, the potential prejudice here is similar to when one juror must be replaced with an alternate.72 Likewise, issues related to the sufficiency of the evidence will not generally result in a reversal for plain error.73

Federal courts are more reluctant to grant relief for plain error in civil cases. For example, the 11th Circuit found no plain error when plaintiff's counsel made numerous "improper" remarks during closing argument that were prejudicial and should have been excluded.74 Similarly, the 11th Circuit found no plain error when the trial court gave an incomplete instruction about the burden of proof.75

Conclusion
In sum, there are similarities between the federal and Florida doctrines dealing with plain and fundamental error, respectively. They both require the unpreserved error to be perceived as a violation of due process or the right to a fair trial which, if left uncorrected, would undermine the public's confidence in our system of justice. In both federal and Florida cases, the courts are generally more likely to find either plain or fundamental error in criminal rather than civil cases. Similarly, in both jurisdictions, the error must be prejudicial to the complaining party. Some unobjected-to errors may be corrected without regard to the outcome of the case, like the denial of the right to counsel of one's choice or an issue with subject-matter jurisdiction.

The largest difference seems to be that for plain error in federal cases, the error must be shown to be an error under the existing law of the relevant circuit at the time of the appeal. Florida does not appear to have that requirement, but trying to get the Florida courts to identify new types of fundamental error has proven difficult over time.

A410

jpay Tell your friends and family to visit www.jpay.com to write letters and send money!

Donald Otis Williams, 1313479
Union Correctional Institution
P. O. Box 1000
Raiford, Florida 32083

A454

USPS
The mailroom received this from the post office today. We are not sure how the contents got out of the envelope.

Retail
U.S. POSTAGE PAID
PM
RAIFORD, FL 32083
DEC 30, 2025
34475
$0.00
RDC 03  1 Lb 12.90 Oz  S2324P503362-02

ited States District Court
den- Collum Memorial Federal Building
7 N.W. Second Street, Suite 337
ala, Florida 34475-6666

CTED DELIVERY DAY: 01/03/26
USPS TRACKING® #

Mailed from a State Correctional Institute

U.S. POSTAGE PITNEY BOWES 0334
REDATE  DEC 30 2025

9505 5166 3086 5364 2475 84

Visit us at usps.com
Label 107R, January 2008



A458

 **UNITED STATES POSTAL SERVICE®**

# Package Search Request

## I. INITIAL FINDINGS *(To be completed by plant)*

From: Post Office™, State and Zip Code®

Mailer *(Name and Address)*

Date Found *(MM/DD/YYYY)* | Found at *(Plant name (NDC, P&DC, etc.))* | Found By *(Name or Initials)*

Addressee *(Name and Address)*

Service Type
- ☐ Adult Signature
- ☐ Certified
- ☐ COD
- ☐ Insured
- ☐ Registered
- ☐ USPS Tracking
- ☐ Priority Mail
- ☐ Priority Mail Express
- ☐ Other _____

Tracking Number | Mailing Date *(MM/DD/YYYY)*

## II. LETTER TO CUSTOMER

Dear Customer,

An empty container or label with your address was found in the mail and is believed to have been separated from a parcel during handling *(see attachments)*. If the contents of the parcel have not been accounted for, you may submit a missing mail search request in one of three ways:

1. **Online** (preferred method). Submit your request on *www.usps.com* using the Missing Mail Application *https://www.usps.com/help/missing-mail.htm* (Option 3).

2. **Visit** your local Post Office.

3. **Call** 1-800-ASK-USPS.

When completing your Missing Mail Application, provide an accurate and detailed description of each item. Give the names or initials *(if personalized)* and other characteristics such as brand or make of the article, model number, color, size, quantity, and material. Attach any pictures that may help identify your merchandise.

After submission of the application, the Postal Service™ will notify you to confirm receipt of your submission. If your mailpiece or its contents are not found, the Postal Service will notify you. Please take that notification, labels, and completed PS Form 3533, *Application for Refund of Fees, Products and Withdrawal of Customer Accounts*, to your local Post Office for a postage refund.

If the parcel was mailed with Postal Service insurance, you can file a domestic claim online. File the claim within 60 days from the mailing date. You can find more information in the *Domestic Mail Manual*, under "Filing Indemnity Claims for Loss or Damage," at *https://pe.usps.com/text/dmm300/609.htm*.

Proper packaging and including your name and address with the contents inside the parcel help to avoid delays. We regret any inconvenience this matter may have caused you and we look forward to serving you in the future.

PS Form **3760**, March 2021 | PSN 7530-02-000-9046

A459

IN THE CIRCUIT COURT OF THE FIFTH
JUDICIAL CIRCUIT, IN AND FOR LAKE
COUNTY, FLORIDA

STATE OF FLORIDA             CASE NO. 2011-CF-000105

vs.

DONALD OTIS WILLIAMS,

        Defendant.
_____/

### ORDER APPOINTING EXPERT FOR COMPETENCY EVALUATION

        THIS CAUSE having come on to be heard before this Court, and the competency of the Defendant to proceed at any material stage of criminal proceeding, to wit:

        _____the trial of this case
        _____pre-trial hearings
        _____entry of a plea
        _____violation of probation or community control proceedings
        _____sentencing
        _____hearings on issues regarding a defendant's failure to comply with court orders or conditions
        _____other matters where the mental competence of the defendant is necessary, having been raised in accordance with the provisions of Rules 3.210 and Section 916.115, Florida Statutes;

and, further, the court having reasonable grounds to question the Defendant's competence to proceed, it is **ORDERED AND ADJUDGED** as follows:

1.      The following individual(s) is/are hereby appointed as an expert(s) to examine the Defendant in accordance with the requirements of this Order:

        **Dr. Scot D. Machlas**
        **10006 Cross Creek Blvd., #521**
        **Tampa, FL 33647**
        **(727) 992-2098**

2.      Each expert appointed in Paragraph 1 above, shall examine the Defendant in accordance with the provisions of Rules 3.210, and 3.211 of the Florida Rules of Criminal Procedure and report relative to the following issues:

        (a) Whether the Defendant is competent to proceed for the purpose indicated above, pursuant to the criteria set forth in section 916.12 Florida Statutes and Rules 3.210, and 3.211 of the Florida rules of Criminal Procedures; that is, whether the Defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational, as well as factual, understanding

A460

of the proceedings against him. In considering the issue of the Defendant's competence to proceed, said experts shall consider and include in their report the following factors and any others deemed relevant by the experts:

The Defendant's capacity to:

    (1)    Appreciate the charges or allegations against him;

    (2)    Appreciate the range and nature of possible penalties, if applicable, which may be imposed in the proceedings against him;

    (3)    Understand the adversarial nature of the legal process;

    (4)    Disclose to his attorney facts pertinent to the proceedings as issue;

    (5)    Manifest appropriate courtroom behavior;

    (6)    Testify relevantly; and

    (7)    Any other factors deemed relevant by the expert;

(b) If the expert finds the Defendant is incompetent to proceed, then the expert shall report on any recommended treatment for the Defendant to attain competence to proceed.

3. In considering the issues relating to treatment, each examining expert shall report on the following factors:

    (a)    Any mental illness or problem causing the incompetence;

    (b)    The treatment or treatments appropriate for the mental illness of the Defendant and an explanation of each of the possible treatment alternatives in order of choices;

    (c)    The availability of acceptable treatment. If treatment is available in the community, the expert shall so state in the report;

    (d)    The necessity or advisability of involuntary hospitalization or placement;

    (e)    The likelihood of the Defendant attaining competence under the treatment recommended, an assessment of the probable duration of the treatment required to restore competence, and the probability that the Defendant will attain competence to proceed in the foreseeable future.

4. Any written report submitted by the expert shall contain the following:

    (a)    The report shall identify the specific matters referred for evaluation;

    (b)    The report shall describe the evaluative procedures, techniques and tests used in the examination and the purpose or purposes for each;

A461

(c) The report shall describe the expert's clinical observations, findings and opinions on each issue referred for evaluation by the court, and indicate specifically those issues, if any, on which the expert could not give an opinion; and

(d) The report shall identify the sources of information used by the expert and present the factual basis for the expert's clinical findings and opinions.

5. The expert appointed above shall submit his or her written report directly to this Court, with copies to the Attorney for the State and the Attorney for the Defendant, on or before the **4th day of January, 2022.**

(a) COURT: Heidi Davis, 550 W. Main Street, Tavares, Florida 32778

(b) Self-Represented Defendant, Donald Otis Williams DOC # U13479 c/o Union Correctional Institution, P.O. Box 1000, Raiford, FL 32083

(c) Defendant's Stand-by counsel, J. Jervis Wise, jervis@acquitter.com

(d) OFFICE OF THE STATE ATTORNEY: Kenneth Nunnelly, eservicelake@sao5.org

6. The Office of the State Courts Administrator shall pay the fees of each expert appointed above upon the submission of a Statement for Payment and in accordance with the terms and amount set forth in Administrative Order A2017-23, and shall be sent to: **Court Administration Lake County, Lake County Judicial Center, 550 W. Main Street, Tavares, FL 32778**. However, if any expert appointed herein also evaluates the Defendant for sanity or mitigation purposes, the billing for that purpose shall be separate and sent to the requesting party, and not to the Office of the state Courts Administrator.

DONE AND ORDERED at Tavares, Lake County, Florida, this __3__ day of January 2021.

_____
HEIDI DAVIS
CIRCUIT JUDGE

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished via US mail and/or inter-office mail delivery to Office of the State Attorney, Post Office Box 7800, Tavares, FL 32778; Self-Represented Defendant, Donald Otis Williams DOC # U13479 c/o Union Correctional Institution, P.O. Box 1000, Raiford, FL 32083; J. Jervis Wise, Esquire – jervis@acquitter.com; Court Administration Lake County, Lake County Judicial Center, 550 W. Main Street, Tavares, FL 32778; and to Dr. Scot D. Machlus – smachlusphd@gmail.com; on the __3__ day of December, January 2021.

_____
JUDICIAL ASSISTANT

A462